# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 30, 2009

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Allen F. Loucks, AUSA
36 South Charles Street
4th Floor
Baltimore, MD  21201

     Re: Venetta R. Brooks v. Michael J. Astrue, Commissioner of
     Social Security, PWG-07-3054

Dear Counsel:

     Pending before this Court, by the parties' consent, are Cross-
Motions for Summary Judgment concerning the Commissioner's decision
partially denying Ms. Brooks' claims for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI")[1]. (Paper
Nos. 7, 11, 20).   This Court must uphold the Commissioner's
decision if it is supported by substantial evidence and if proper
legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*,
76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514,
517 (4th Cir. 1987).   A hearing is unnecessary.  Local Rule 105.6.
For the reasons that follow, this Court DENIES the Commissioner's
Motion and GRANTS the Plaintiff's Alternative Motion for Remand.

     Ms. Brooks (sometimes referred to as "Claimant") applied for
DIB and SSI on October 29, 2004, alleging that she was disabled as
of August 30, 2004, due to degenerative disc disease, scoliosis,
pain in both legs, stenosis, spondylosis, hepatitis C, irritable
bowl syndrome "IBS", and depression. (Tr. 19, 96, 187). Her claims
were denied initially and upon reconsideration. (Tr. 40-48).
After a hearing before an Administrative Law Judge, the Honorable
Judith A. Showalter ("ALJ"), held on January 11, 2007, the ALJ
partially granted Ms. Brooks' claims in a decision dated April 21,
2007.  The ALJ concluded that for a closed period between August
30, 2004 and April 1, 2006, the Claimant's degenerative disc
disease, IBS, and mild to moderate depression were severe

---

[1]The ALJ found Ms. Brooks was disabled for "a closed period"
from her alleged onset date until April 1, 2006. (Tr. 23).

impairments as defined in the Regulations, and that she retained the residual functional capacity ("RFC") to perform less than a full range of sedentary work[2].(Tr. 20). Based on her RFC, the ALJ found it impossible for Claimant to perform any of her past relevant work ("PRW")from August 30, 2004 through April 1, 2006, and also found there were no jobs available in the local or national economy that she could perform. Accordingly, the ALJ found Claimant was disabled.(Tr. 22-23).

However, the ALJ also concluded that as of April 1, 2006, Claimant experienced "medical improvement"[3]. The ALJ found that as of April 1, 2006, Ms. Brooks retained the residual functional capacity ("RFC") to perform light work[4]. (Tr. 24). Based on her RFC, the ALJ found Claimant could perform her PRW as a bartender and cleaner. Although the analysis could have ended there, the ALJ also found after receiving testimony from a vocational expert ("VE"), that work existed in the national and local economies in significant numbers which Ms. Brooks could perform.(Tr. 32). Accordingly, the ALJ found she was no longer disabled as of April 1, 2006. (Tr. 15-32). On September 12, 2007, the Appeals Council denied Ms. Brooks' request for review, making her case ready for judicial review. (Tr. 1-5a).

---

[2] The ALJ's RFC Finding No. 15 does not address what non-exertional limitations Claimant has.(Tr. 20).

[3] Before setting forth her findings the ALJ recognized the standard used to determine medical improvement: "[i]f the claimant is found disabled at any point in the process, the undersigned must also determine if her disability continues through the date of the decision. In making this determination, the undersigned must follow an eight step evaluation process for the Title II claim and a seven step process for the Title XVI claim (20 CFR§ § 404.1594 and 416.994). If the undersigned can make a decision at a step, the evaluation will not go on to the next step."(Tr. 17).

[4] In the Findings portion of her decision the ALJ stated beginning on April 1, 2006 the claimant had the residual functional capacity to lift and carry ten pounds on a frequent basis, twenty pounds on an occasional basis, to stand/walk at least six hours in an eight hour period, and to sit for prolonged period of six hours or more in any eight hour period. *See* FOF No. 15.(Tr. 24). Similar to FOF NO. 6, this finding does not comply with SSR 96-8p and does not address Claimant's non-exertional limitations. *See* FN. 3, supra.

Ms. Brooks argues that the ALJ erred in determining her mental and physical RFC and failed to analyze properly the opinions of her treating physician, Dr. Burke and the examining physician, Dr. William Barrish. *See* Plaintiff's Memorandum, pp. 4-11. The Commissioner argues that the ALJ adequately discussed the basis for her RFC findings and properly rejected Dr. Barrish's opinions. *See* Defendant's Memorandum, pp. 16-21.

The primary issue in this case is whether the ALJ's finding that Ms. Brooks medically improved is supported by substantial evidence. A medical improvement is defined as "any decrease in the medical severity of your impairment which was present at the time of your most recent favorable medical decision that you were disabled or continued to be disabled." 20 CFR §404.1594(b)(1). Such a determination "must be based on changes(improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s), and must be related to the ability of the claimant to perform work activities." 20 CFR §404.1594(b)(1), 404.1594(b)(3). The government bears the initial burden of proving medical improvement i.e., that claimant's disability has ended. *Pack v. Heckler*, 740 F.2d 292, 294 (4th Cir. 1984). After careful review of the record in this case I find that Government failed to meet this burden.

It is undisputed that Ms. Brooks has an affective disorder and a somataform disorder and that they were severe. (Tr. 274, 323). At steps two and three the ALJ found that Ms. Brooks had "mild" limitations in activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" limitations in maintaining concentration, persistence, and pace, and experienced "no" episodes of decompensation. (Tr. 19). After careful review of the record and the ALJ's decision, the Court finds that the ALJ erred at step four of the sequential evaluation in evaluating Ms. Brooks' mental RFC. The ALJ failed to discuss whether she considered properly all of the evidence in determining Claimant's RFC. The ALJ found in relevant part as follows:

> "[t]he claimant has had the residual functional capacity to lift and carry ten pounds on a frequent basis, twenty pounds on an occasional basis, to stand/walk at least six hours in an eight hour period, and to sit for prolonged period of six hours or more in any eight hour period. *See* Finding of Fact ("FOF") No. 15. (Tr. 24).

The are no findings stated by the ALJ with regard to Claimant's non-exertional limitations. (Tr. 20, 24). The ALJ's summary of findings of functional limitations at steps two and three of the sequential evaluation did **not** satisfy her duty at step four in determining Ms. Brooks' mental RFC. (Tr. 21)(emphasis

added).

The ALJ documented her specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of 416.920a at step three.(Tr. 17). However the ALJ's discussion of Ms. Brooks' mental limitations at steps two and three is **not** an RFC assessment[5], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation.  SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

The ALJ acknowledged some non exertional limitations --but only did so later in the discussion portion of her decision-- and inexplicably **none** of these limitations were included in the RFC findings portions of her decision. (Tr. 20, 24, 30-31).   In his Memorandum, the Commissioner acknowledges this error, but argues that the ALJ adequately described the maximum amount of work Ms. Brooks could perform since there were non exertional limitations included in the hypothetical presented to the VE at the hearing. However, I am not able to say the ALJ's findings are supported by substantial evidence.  For example, if the ALJ found--as the Commissioner argues--that Claimant was required to be isolated from people--there is no explanation of how such a hypothetical Claimant who had to be isolated could work as a bartender.  Further, there

---

[5] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings <u>by requiring consideration of an expanded list of work related capacities</u> that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment.**" *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

is no explanation how, or whether, the ALJ determined that these "limitations" were consistent with limitations Dr. Payne and Dr. Peterson noted in their Mental Residual Functional Capacity Assessment forms. *See* Exhibits 15F and 20F. For example, Dr. Payne and Dr. Peterson both found that Ms. Brooks was "moderately" limited in her ability to complete a normal workweek without being interrupted from psychologically based symptoms and to perform at a consistent pace with an unreasonable number and length of rest periods.  The doctors also found that Ms. Brooks was moderately limited in at least 6 additional categories. (Tr. 289, 324).  The ALJ discussed the PRTF's submitted by the DDS reviewing doctors, but the ALJ never referenced the MRFCA's, and the undersigned simply has no way of knowing how, or whether, the hypothetical presented to the VE in this case[6] adequately reflects all of the limitations found by these doctors.

Finally, there is no explanation how or whether, or on what medical basis the ALJ determined that there was "medical improvement" with respect Claimant's severe mental impairment. During the administrative hearing held in January 2007, Claimant testified that she was still feeling depressed, that she suffered from anxiety attacks, was still taking Valium and Ambien, and that she stopped treatment with her psychotherapist because her insurance had expired. (Tr. 502, 524, 557, 560-561). This evidence was not discussed by the ALJ, and conflicts with the ALJ's statement that "the record indicates that she only sought medical treatment from a mental health professional to help her deal with her then pending surgery." (Tr. 29).

Simply stated, it is not clear from her decision whether the ALJ properly evaluated Ms. Brooks' mental impairments either before or after the "medical improvement date" in this case. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Brooks' mental impairments is supported by substantial evidence.

With respect to Claimant's physical limitations the ALJ discussed Consultative examiner Dr. Barrish's Physical   Residual

---

[6] The hypothetical to the VE included the following limitations: "simple, unskilled low stress work, not at production pace, that is essentially isolated with only occasional supervision." (Tr. 575).

Functional Capacity Questionnaire[7] but rejected it in an opinion that misstates the factual record and engages in flights of gratuitous and improper speculation. The ALJ stated:

> "...[W]illiam Barrish examined the claimant on February 20, 2007. Dr. Barrish's report appears to be based almost entirely on the subjective complaints of the claimant. **Dr. Barrish did not have the complete medical records of the claimant's treating physician, who, in fact, has stated that the claimant can and should return to work.** Dr. Burke's treatment notes do not support an assessment of less than sedentary by April 2006. **In addition, Dr Barrish's report appears to be internally contradictory.** For example, the claimant demonstrated significant restriction of flexion and extension "with significant stiffness". However, there appears to be little, if anything, to support the claimant's allegations. Her straight leg-raising test was negative. The claimant appeared at the examination using a cane, but there is nothing in the medical record that indicates a cane was ever prescribed by a treating physician...."(Tr. 28)(emphasis added).

As noted above, this is not an accurate characterization of the record.  The record contains over 40 pages of treatment notes from Dr. Burke's office, yet nowhere does Dr. Burke conclude that Claimant "can and in fact should return to work." *See* Exhibits 18-F, 28-F (Tr. 298-321 Tr. 502-519; Cf. Tr 27).  There is no evidence in the record to reasonably conclude -- or  imply-- that Dr. Burke or his Physician's assistant, Mr. Robert Crowder, was under the impression that Claimant could, or should, return to work. Rather the doctor's office noted Ms. Brooks' statement of her intention to enroll  in a work training program. (Tr. 502).

Furthermore, the ALJ did not identify the medical evidence that supposedly was inconsistent with the opinions of  Dr. William Barrish. Even more problematic is the ALJ's rejection of the doctor's opinions on the basis that he "did not have the complete medical records of the claimants treating physician."  The ALJ did

---

[7] Dr. Barrish stated *inter alia* that Claimant could: lift 10 pounds occasionally; lift less than 10 pounds frequently; must periodically alternate sitting and standing to relieve pain or discomfort; was limited in pushing and pulling in both her upper and lower extremities; could never climb,kneel, crouch, crawl or stoop and could only occasionally balance. *See* Exhibit 30-F (Tr. 524-531).

not cite -- nor does the undersigned find-- any evidence in the record to support the conclusion that Dr. Barrish did not review the entire record. Finally if Dr. Barrish's assessment was internally inconsistent-- as the ALJ stated-- then she was required to recontact the doctor pursuant to the Commissioner's own regulation, 20 CFR §404.1512(e) which states in relevant part "in relevant part, states:... **We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved.**"

Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Brooks' impairments and the ALJ's finding of medical improvement is supported by substantial evidence and the case will be remanded.  The regulations require the ALJ to follow a specific *process to determine if there has been medical improvement* . *See Smith v. Barnhart*, 92 Fed. Appx. 752 (10th Cir. 2004) (medical improvement standard applies in closed period cases).  For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum.  A separate Order shall issue.


Dated: 9/30/09

_____

                                    /s/
                          _____
                          Paul W. Grimm
                          United States Magistrate Judge